WILLIAM G. WILLIAMS and others *v.* MARTIN MABEE and others.

Bill filed July 11. 1843, stating that J. S. died in March, 1812, having devised a tract of land to P. S. in trust for the daughter of J. S., a married woman, and her children, free from the control of her husband. The daughter died, leaving six children. On the 4th November, 1819, the daughter and her husband and the children made a deed of the land to G. M., some of the children being under age ; and P. S., the trustee, subscribed a writing under seal at the foot of the deed in the words following : "I do hereby agree to the above conveyance in manner and form therein set forth." The consideration of this deed was a deed from G. M. for certain lands in Ohio. The bill stated that P. S. had removed from the State; and prayed that a trustee be appointed,in his stead, to carry the trust into effect. It appeared that after the minor children came of age they joined in a sale and conveyance of the land in Ohio. The Court refused to appoint a new trustee.

A sale and conveyance made by persons of full age of lands which had been conveyed to them while under age in exchange for lands conveyed by them while under age was held to be a confirmation of the deed made by them while under age.

Bill filed July 11, 1843, by Wm G. Williams and Margaret his wife, Sanford F. Madden and Mary his wife, John Knoff, John Fish - and Sally his wife, Hezekiah Oliver Cantwell and Mary Ann his wife, Margaret Randall and Lydia Randall of the county of Coshocton, in the State of Ohio, stating that John Simmons died in March, 1812, leaving a will and codicil, by which he devised to his son Peter Simmons, and to his heirs and assigns forever, a tract of land in Sussex, with a saw mill thereon, " to the use of and in trust for his daughter Lydia, wife of John Knoff, and all her children which she then had or might thereafter have by the said Knoff, so that the said Knoff should have no power or control over the same, but that the same should go to the sole and separate use and benefit of his said daughter and her children." That the said Lydia has since died, leaving six children by the said Knoff, namely, Susan, who intermarried with Oliver Randall, and who has since died leaving the complainant Mary Ann, wife of the complainant Cantwell, and the complainants Margaret Randall and Lydia Randall her children,

he complainant Margaret, who intermarried with the complainant Williams, Elizabeth, who intermarried with John Davids, and who is now dead, the complainant Mary, wife of the complainant Madden, the complainant Sally, wife of the complainant Fish, and the complainant John Knoff, who was the only son.

That the said will was duly proved by John Simmons and John Linn, the executors therein named, on the 18th March, 1812.

That the said Peter Simmons took upon himself the said trust imposed upon him by the said will.

That a deed of bargain and sale was drawn, purporting to be made between the said John Knoff and Lydia his wife, Oliver Randall and Susan his wife, Margaret Knoff, Elizabeth Knoff, Mary Knoff, Sally Knoff and John Knoff, of Sussex county, New Jersey, of the one part, and George Mabee, of the said county, of the other part, dated November 4, 1819, whereby, for the consideration of $500 expressed in said deed as paid to the said parties of the first part, the said parties of the first part conveyed to the said Mabee, in fee, " all that piece of land which by a codicil to the will of John Simmons was left to Peter Simmons in trust for his daughter Lydia and her children." That the said deed was, on the day of the date thereof, as the complainants have been informed, executed by the said John Knoff and Lydia his wife, Oliver Randall and Susan his wife, Margaret Williams and Elizabeth, children of the said Elizabeth Knoff. That the execution of the said deed by the said Susan Randall was by compulsion and restraint, and not of her own free will and consent. That neither the said Elizabeth Knoff nor Margaret Knoff was of legal age when the said deed was so executed. That the complainant Margaret Williams was of the age of 19 years and 15 days, and the said Elizabeth of the age of 18 years, 7 months and 22 days, and that the said John, Mary and Sally were still younger.

That the said sum of $500 was not the real consideration for for said deed, and that no money or value whatever was received for the said land by the said John Knoff and Lydia his wife, Oliver Randall and Susan his wife, Mary and Elizabeth, or any of them, or any person for them; but that the real

consideration was a certain tract of land in Ohio to which said Mabee pretended to have title, which he pretended to convey to the said John Knoff and Oliver Randall, or one of them, or some other or all the said parties named in said deed of bargain and sale; and that the said John Knoff and Oliver Randall, nor either of them, nor any one of the parties named in said deed to Mabee, ever obtained the possession of the said land, or derived any benefit from the pretended title of said Mabee to the same so by him conveyed; but that the said title was defective and void, and of no value to them or any or either of them, although the said John Knoff and Lydia his wife, and Oliver Randall and Susan his wife, removed from this State to Ohio with the expectation of occupying and realizing the benefit of the said land, the consideration of the said deed.

That the complainants have been informed, and believe and charge, that the said George Mabee and his wife, on the 1st March, 1825, by deed duly executed and delivered, for the consideration of $300 therein expressed, did convey to John Mabee, of said county of Sussex, the said lot of land in Sussex, which said lot is in said deed described as the lot of land which said George Mabee purchased of John Knoff and his wife and their children ; which deed was recorded &c.

That the complainants are informed and believe that the said John Mabee died in possession of said land, on or about March 1, 1836, leaving a will, which was duly proved by Sarah Mabee, his widow, and Martin Mabee and Jacob Mabee, his sons; by which will the said John.Mabee devised all his real estate to his children, except the above named premises mentioned as devised by said John Simmons to the said Peter Simmons, trustee as aforesaid.

That the said John Mabee, deceased, left George, John, Jacob, Robert and Martin Mabee, and Ann, wife of Schooley Darius, Jane, wife of Ephraim Kimball, and Hannah, wife of John Struble, his children and heirs at law.

That the complainants are informed and believe that, afterwards, on the 17th of March, 1838, the said George Mabee and his wife, Jacob Mabee, Robert Mabee and his wife, Schooley Darius and Ann his wife, Ephraim Kimbal and Jane his wife, and John Struble and Hannah his wife, by a deed of re-

lease and quitclaim, did bargain, sell, release and convey to Martin Mabee the lands in question ; to have and to hold to the said Martin Mabee, his heirs and assigns forever.

That the complainants have been informed and believe, that the said Peter Simmons, the said trustee, after the execution of the said deed from John Knoff and wife and Oliver Randall and wife and Margaret Williams and Elizabeth Davids to the said George Mabee, removed from this State to the western part of Pennsylvania, not less than 15 years ago, to the best of the complainants' information. That the complainants are unable to say whether or not he is still living.

That the said John Knoff died in May, 1844, and that the said Lydia, his widow, died August 10, 1838, leaving the complainants Margaret Williams, Mary Madden, Sally Fish and John Knoff, her children, and the complainants Mary Ann Cantwell, Margaret Randall and Lydia Randall, her grandchildren, children of Susan Randall, her heirs at law; the said Susan having died before the death of said Lydia Knoff, and the said Elizabeth Davids being also then dead without leaving any children.

That the said John Mabee the younger and the said Martin Mabee, since the death of the said John Mabee the elder, or one of them, have or has occupied and enjoyed the premises in question, and received the rents, issues and profits thereof, and still receive the same.

That since the death of the said Lydia Knoff the complainants have frequently and in a friendly manner applied to the said John Mabee and Martin Mabee to yield up to the complainants the possession &c. ; and to account for the said rents and profits, or to make a proper compensation to the complainants and receive a perfect title from the complainants.

The bill prays that a trustee be appointed, instead of the said Peter Simmons, to carry into effect the trust contained in the said will of John Simmons in relation to the premises in question ; and that an account may be taken of the rents and profits which have come to the hands of the defendants, or either of them, and that they may be made to account therefor to the trustee so to be appointed, to be appropriated in discharge of the

said trust; and that the premises may be sold under the direction of this court, and that all proper parties be decreed to join in the said sale; and for such other and further relief as &c.

Process is prayed against Martin Mabee and his wife, John Mabee and his wife and Peter Simmons.

The answer of Martin Mabee was filed June 14, 1847. He admits the will of John Simmons as stated in the bill. Admits that John Knoff and Lydia his wife, Oliver Randall and Susan his wife, Margaret Knoff and Elizabeth Knoff executed to Geo. Mabee a deed for the premises in question, for the consideration of $500, dated Nov. 4, 1819; but that said deed was not, nor was any other deed for said land executed by Mary, John and Sarah, children of said Lydia, or either of them, to said George Mabee, to his knowledge or belief.

He denies that the said deed was executed by Susan Randall upon any compulsion and restraint, but, as he is informed and believes, of her own free will, without any fear, threats or compulsion of her husband or of any other person. He says he has no knowledge of the age of Margaret and Elizabeth Knoff when they executed the said deed.

He denies that the said deed was without adequate consideration; but says he is informed and believes that it was made in consideration of $212 in money, paid by said George Mabee, and the conveyance to the use of the wife and children of said John Knoff of a tract of land of 112 acres in Coshocton, Ohio, for which the said George Mabee had paid $300; which consideration was more than the value of the lands conveyed by the said deed to the said George Mabee.

· He denies that the title to said lands in Ohio was defective; but says he is informed and believes that the title was good, valid and subsisting at the time of the said conveyance thereof; and that if Knoff and his wife did not have possession thereof it must have been by reason of their own neglect and misconduct.

He states that the contract for the conveyance of the said land to the said Geo. Mabee was upon adequate and full consideration, and for the benefit and advantage of the said Lydia Knoff and

her children, who were poor and needed more land for their comfortable support, and believed it would be better for them to move to Ohio, where they would have a farm of 112 acres and more means of subsistence ; and that the said conveyance by the said George Mabee to them was made in good faith, and truly to the interest and advantage of the said family.

He says that Peter Simmons, the said trustee, agreed with the said family in the belief that the said contract would be to their advantage ; and that he united with them in the said contract, and also in the said deed, and expressed his concurrence therein by his writing, under his hand and seal, subjoined to the said deed, as follows ; " I do hereby agree to the above conveyance in manner and form therein set forth. Given under my hand and seal the date above."

He says that the said George Mabee, soon after the said conveyance to him, took possession of the premises in question claiming to be the owner thereof, and occupied the same until about May 1, 1825, when he sold and conveyed the same to John Mabee, for $300, which was then estimated to be the full value thereof. That John Mabee continued in possession of said land until about February 11, 1836, when he died, leaving a will by which he directed the said land, together with other lands, to be sold to pay debts and legacies, as by said will appears. That the executors of the will of said John Mabee, and all the children of the said John Mabee except his son John, united in the conveyance of the land in question, with others, to this defendant, by their deed dated March 17, 1838. That the land in question, after the death of said John Mabee, up to the time of the conveyance in question, was occupied by the heirs and executors of the said John Mabee ; and since the conveyance thereof to this defendant has been occupied by them to this time. And he submits that the land in question having been in the possession of him, this defendant, and those under whom he holds, since 1819, more than twenty-three years before the commencement of this suit, he ought not now to be disturbed in the enjoyment thereof ; but should be protected by the Statute of limitations ; and he prays the benefit thereof as fully as if he had formally pleaded the same.

32

He says he is informed and believes that, after the said John Knoff and his family had moved to Ohio, the said George Mabee offered to the said John Knoff and Peter Simmons that, if they would re-convey to him the said land in Ohio and pay back the money paid by him as part of the consideration of the premises in question, he would re-convey the premises in question to them; but they refused to do so.

That since the commencement of this suit a proposition was made to him to arrange the matter in controversy; and with a view to such arrangemement he made various propositions, and, among others, he proposed to said Peter Simmons that, if he would procure a conveyance to this defendant of the said Ohio land by the same or as good a title as that which said George Mabee's deed gave, he would pay and allow to him, the said Peter Simmons, or to the heirs of the said John Knoff and wife, the full value of the said tract of land in Sussex, [the premises in question,] deducting what had been paid by the said George Mabee thereon; but that said Peter declined the said proposition, saying he had no authority or power to procure such conveyance.

He says that the claim of the complainants has been in treaty for arrangement almost ever since the filing of the bill of complainant; and that in July, 1846, as he is informed and believes, a copy of an order to file an answer to the bill was served on this defendant, and that this defendant, through his solicitor, then renewed the said treaty of arrangement, and the same was continued until September then next, at which time the said Peter Simmons, who resided somewhere in the western part of Pennsylvania, visited Sussex, and called on this defendant in relation to the said claim, and this defendant proposed further terms which he, the said Peter Simmons, said he was not authorized to accept in the absence of the children and heirs of the said John Knoff and wife, who resided in Ohio, but it was proposed that the solicitor of the complainants and the said Peter should communicate by letter to the said children and heirs the terms of the proposition, and that proceedings in the suit should be suspended until an answer should be obtained. And he says he was informed and believes, that the solicitor of the complainants did communicate

by letter to the complainants, or some of them, the said proposition; and he has several times since inquired for, but has received no reply thereto; and that by reason of the said understanding he has omitted to file his answer until this time; and that the omission to file his answer has not been for the purpose of delay, but with the desire and expectation of having some amicable arrangement of the same.

Testimony was taken on both sides.

*W. Halsted* for the complainants.

*D. Haines* for the defendants. He cited 1 *Bro. Ch.* 72; 18 *Ves.* 395, 418; 2 *Ch. Ca.* 63; 1 *Cruise's Dig.* 493, 5, 524; *Ambl.* 545; 1 *Coxe's Ch.* 199; 3 *Cruise's Dig.* 375; 6 *Ib.* 29; *Selwyn on Trusts,* 138; 3 *Burr,* 1794.

THE CHANCELLOR. If the concurrence of Peter Simmons, the trustee, in the conveyance made to Mabee in 1819, expressed at the foot of that deed, amounted to a conveyance by him of the legal estate, the consequences of such conveyance would be the same against a new trustee as against Simmons. If, by reason of such concurrence, Simmons could not maintain ejectment, a new trustee could not; and in this view the appointment of a new trustee would be useless.

If there is any equity, at this late day, in any of the *cestuis,* it must arise from Mabee's having knowledge of the trust when he took the conveyance of 1819. But by this knowledge Mabee became trustee; and the trust would follow to his grantees, as far as they, respectively, had notice of the trust, or are chargeable with notice; and no further. In this view, also, I see no good reason for the appointment of a new trustee.

If the said concurrence of Simmons, the trustee, expressed as aforesaid, did not convey the legal estate out of him, yet Mabee is protected so far as respects the *cestuis que trust* who were of age and joined in the said conveyance to him.

In reference to the rest of the *cestuis que trust,* or all of them but one, a fact appears in the testimony of a witness residing in

Ohio, taken under a commission, which does not appear in the pleadings, not being known, as I suppose, to the defendants until the return of the commission, and which should have an influence in favor of the defendants. It is, that the *cestuis que trust* after they were all of age, or their representatives, sold and conveyed their interest in the Ohio farm which was conveyed by Mabee in exchange for the lands in question in this suit. This testimony speaks as to all but one; and the defendants think they can show that that one also joined in the conveyance of the Ohio farm.

I think that this act should, after so great a lapse of time, under a proper state of pleadings, be considered a confirmation of the deed to Mabee by all the *cestuis que trust* who joined in the conveyance of the Ohio farm. And I am willing, under the circumstances, that such course be taken in the cause, on the part of the defendants, as will give them the benefit of this fact.

If, under these views, it is thought, on the part of the complainants, that either of the *cestuis que trust* is in a position to call for an execution of the trust so far as his or her interest is concerned, I have no objection to retain the bill. But these suggestions are made without prejudice, and without intending to give any decided conviction in favor of any *cestui que trust* though he or she may not have joined in the conveyance of the Ohio farm.

A new trustee will not now be appointed.